USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  02/13/26

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

QUINTIN J. BALLENTINE,

Plaintiff,

-against-

JACOB BARAK and POST GRADUATE
CENTER FOR MENTAL HEALTH,

Defendants.

25-CV-515 (AT) (BCM)

**REPORT AND RECOMMENDATION
TO THE HON. ANALISA TORRES**

**BARBARA MOSES, United States Magistrate Judge.**

Plaintiff Quintin J. Ballentine, proceeding pro se and *in forma pauperis*, brings this action against the Postgraduate Center for Mental Health (PCMH), which operates a supportive mental health housing facility where plaintiff resided from July 2019 to March 2025, and Jacob Barak, PCMH's Chief Executive Officer (CEO). Plaintiff seeks damages and injunctive relief pursuant to 42 U.S.C. § 1983, alleging that defendants violated his rights under the First and Fourteenth Amendments to the United States Constitution. He also asserts claims for violation of the Fair Housing Act (FHA), 42 U.S.C. § 3601 *et seq.*, and for constructive eviction and breach of contract under state law. Now before me for report and recommendation is defendants' motion (Dkt. 34) to dismiss plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6). After careful review of the file, I conclude that the motion should be granted, because plaintiff has not plausibly stated any federal claim. However, plaintiff should be given leave to replead his FHA claims.

I.      BACKGROUND

A.      Factual Allegations

The facts summarized here are drawn from plaintiff's Second Amended Complaint (Complaint or SAC) (Dkt. 21), as supplemented by his memorandum in opposition to defendants' motion to dismiss (Pl. Mem.) (Dkt. 41). Defendant PCMH is a private nonprofit organization that operates "supportive housing programs" in New York City, including a facility on Marion Avenue

in the Bronx (Marion Avenue residence). SAC ¶¶ 5, 6, 17. Defendant Barak is the CEO of PCMH. *Id*. ¶ 7. Plaintiff Ballentin was a tenant residing at the Marion Avenue residence from approximately July 2019 to March 2025. *Id*. ¶ 5.

Plaintiff's tenancy at the Marion Avenue residence began after a difficult chapter in his life involving the death of his grandmother and a period of homelessness. SAC ¶ 8. During plaintiff's tenancy, he "struggle[ed] with mental health challenges," but was "high-functioning and actively engaged in treatment." *Id*. "Early interactions with staff" of PCMH were "cordial." *Id*. ¶ 9.

While residing at PCMH's facility, plaintiff advocated for himself and "other residents, including children who were neglected and abused," Pl. Mem. at 13; supported "tenant rights," *id*. at 14; and raised "objections to mistreatment." SAC ¶ 10. Plaintiff does not provide dates or details for any of these advocacy activities. He alleges, however, that after his advocacy began, "the supportive housing environment quickly deteriorated into a coercive and hostile setting," *id*. ¶ 9, and he experienced "retaliation," including "[f]alse accusations of violence and psychosis," "[f]alsified psychiatric records alleging schizophrenia and aggression," "[t]argeted police wellness checks and forced hospitalizations," and "[d]enial of reasonable requests and degradation by staff" of PCMH. *Id*. ¶ 10.

Plaintiff does not provide any further details concerning the retaliation he experienced, except for a single incident: on one occasion, then-director Jacqueline Peretz falsely claimed that plaintiff had "lunged" at her and called "911," notwithstanding that plaintiff "was not in the building or even in the borough at the time," as later confirmed by surveillance footage. SAC ¶ 11. No "disciplinary action was taken against the staff for the false report." *Id*. Plaintiff does not provide a date for this incident, nor for any other retaliatory incident; does not identify who falsified the psychiatric records, instigated the wellness checks and hospitalizations, or denied his

"reasonable requests"; and does not describe those requests. He does allege, in general terms, that he was subject to "at least three hospitalizations based solely on staff reports," *id*. ¶ 12, but does not provide any dates or other details of these incidents.

During plaintiff's tenancy at the Marion Avenue residence, "four individuals he advocated for passed away from drug overdoses." Pl. Mem. at 13; *see* also SAC ¶ 13 (plaintiff "witnessed multiple overdoses and deaths of residents"). Plaintiff does not identify these residents or disclose when they died. However, he attributes their deaths to "to lack of care and systemic indifference by staff, who discouraged or punished complaints." SAC ¶ 13. While there were PCMH "[s]taff members who supported residents," they were "terminated or disciplined for whistleblowing." *Id*. ¶ 14. Plaintiff does not identify any of the terminated staff members.

Due to "this ongoing abuse and fear for his psychological safety, Plaintiff vacated the facility in March 2025." SAC ¶ 15. Plaintiff acknowledges that PCMH "labels this a 'voluntary discharge,'" but asserts that in reality he was "constructively evicted under duress." *Id*.

### B.    Procedural History

Plaintiff Ballentine, who is a frequent litigant in this Court,[1] filed his initial complaint on January 16, 2025. (Dkt. 1.) On March 10, 2025, he filed an amended complaint. (Dkt. 11.) On April 7, 2025, defendants waived service (Dkt. 16), and on May 30, 2025, they appeared through counsel. (Dkt. 18.)

---

[1] A number of plaintiff's complaints allege that he was mistreated by the staff of shelters or supportive housing facilities. *See, e.g.*, Complaint (Dkt. 1), *Ballentine v. State of New York*, No. 24-CV-4615 (LTS) (S.D.N.Y. June 17, 2024); Complaint (Dkt. 1), *Ballentine v. Bowery Residents Committee*, No. 25-CV- 2980 (LTS) (S.D.N.Y. April 9, 2025); Complaint (Dkt. 1), *Ballentine v. Cares for the Homeless*, No. 25-CV-3819 (GHW) (S.D.N.Y. May 4, 2025); Complaint (Dkt. 1), *Ballentine v. State of New York*, No. 25-CV-4700 (LTS) (S.D.N.Y. June 2, 2025); Complaint (Dkt. 1), *Ballentine v. 245 West 131st Development LLC*, No. 25-CV-9990 (UA) (S.D.N.Y. Nov. 29, 2025).

On June 2, 2025, plaintiff amended his pleading again, without first obtaining defendants' consent or leave of the Court. On June 16, 2025, defendants advised the Court by letter that they intended to file "a motion to dismiss Plaintiff's Second Amended Complaint, which is now the operative pleading in this action." (Dkt. 26 at 1.) On June 18, 2025, "[t]he Court construe[d] defendants' letter, in relevant part, as their consent to the filing of the pleading at Dkt. 21 as plaintiff's Second Amended Complaint (SAC)." (Dkt. 28 at 2.)

Plaintiff invokes this Court's federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, *see* SAC ¶ 3, and asserts five causes of action. In Count I, brought pursuant to 42 U.S.C. § 1983, plaintiff alleges that defendants retaliated against him, in violation of the First Amendment, for "exercising protected speech and advocacy." SAC ¶¶ 16-18. In Count II, also brought pursuant to § 1983, he alleges that defendants violated his due process rights under the Fourteenth Amendment by falsifying his psychiatric records, thereby "undermining [his] credibility and dignity, resulting in reputational harm and tangible deprivation of housing and services." SAC ¶¶ 19-20. In Count III, plaintiff alleges that defendants violated the FHA, 42 U.S.C. §§ 3604 and 3617, by discriminating against him on the basis of disability, retaliating against his "protected activities," and subjecting him to a "hostile housing environment." SAC ¶¶ 21-22. In Count IV, plaintiff alleges that he was constructively evicted. *Id*. ¶ 23. Finally, in Count V, he alleges that PCMH violated plaintiff's Occupancy Agreement, Sublease and Permanent Housing Service Agreement, as well as the New York Mental Hygiene Law, by "denying services or misusing them punitively," "[f]alsifying records," "[r]etaliating against plaintiff for attempting to advocate," "coercive use of wellness checks and psychiatric admissions," and "failing to maintain a safe and supportive environment." *Id*. ¶¶ 24-25.

Plaintiff seeks compensatory and punitive damages, as well as injunctive relief, including the correction of false records, "[i]ndependent oversight of PCMH facilities," and "[s]taff training and accountability reforms." SAC at ECF pp. 7-8.

On July 21, 2025, defendants filed their motion to dismiss the SAC, supported by a memorandum of law (Dkt. 36) and the declaration of attorney Tamika N. Hardy (Dkt. 35), with exhibits. On August 14, 2025, in opposition to the motion, plaintiff filed his memorandum of law, together with a document entitled Notice of Motion and Motion in Opposition (Pl. Cross-Mot.) (Dkt. 40), which contains additional legal argument in opposition to the motion to dismiss and requests, in the alternative, that plaintiff be granted leave to amend, "should the Court find any claim insufficiently stated." Pl. Cross-Mot. at 5. On September 15, 2025, defendants filed a reply memorandum (Def. Reply) (Dkt. 45).[2]

## II.    LEGAL STANDARDS

### A.    Rule 12(b)(6)

If a plaintiff's complaint fails to present "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," the deficient claims may be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 65 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. If the plaintiff has

---

[2] After the motion to dismiss was fully briefed, plaintiff filed two unauthorized sur-replies (*see* Dkts. 46, 47), to which defendants responded. (Dkt. 48.) By order dated September 25, 2025, I advised the parties that all three filings would be disregarded. (Dkt. 49.) Plaintiff then filed a letter raising his "concern about the appearance of partiality and any potential conflicts of interest," including under 28 U.S.C. § 455(a). (Dkt. 51, at 2.) I construed this letter "as a motion to recuse me pursuant to 28 U.S.C. § 455(a)," which I denied. (Dkt. 52.)

not "nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

When evaluating a Rule 12(b)(6) motion, the court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). I have done so here. In light of plaintiff's pro se status, I have also accepted – under the same standard – the factual allegations made in his opposition papers, to the extent not inconsistent with his pleading. *See Ford v. Miller*, 2019 WL 6831640, at *6 (S.D.N.Y. Aug. 23, 2019) ("[F]actual allegations made in a pro se plaintiff's opposition papers, or the attachments thereto, may be considered 'as supplementing the Complaint, at least to the extent they are consistent with the allegations in the Complaint.'") (quoting *George v. Pathways to Hous., Inc.*, 2012 WL 2512964, at *6 n.7 (S.D.N.Y. June 29, 2012)), *adopted*, 2019 WL 4673445 (S.D.N.Y. Sept. 25, 2019); *accord Dawkins v. Biondi Educ. Ctr.*, 164 F. Supp. 3d 518, 521 n.1 (S.D.N.Y. 2016) (collecting cases).

Whether set forth in a complaint or in a supplemental filing, however, the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (internal citations omitted) (quoting *Twombly*, 550 U.S. at 555, 557). Thus, the court may not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. "After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is

entitled to relief." *Ballentine v. Bronx Care Med. Ctr.*, 2024 WL 4635253, at *1 (S.D.N.Y. Oct. 28, 2024) (dismissing an earlier case filed by plaintiff Ballentine pursuant to Rule 12(b)(6)).

"It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (citation and quotation marks omitted). However, pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Maisonet v. Metro. Hosp. & Health Hosp. Corp.*, 640 F. Supp. 2d 345, 348 (S.D.N.Y. 2009) (quoting *Boddie v. New York State Div. of Parole*, 285 F. Supp. 2d 421, 426 (S.D.N.Y. 2003)). Thus, a pro se plaintiff, like other plaintiffs, "must state a plausible claim for relief." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013).

Because the purpose of a Rule 12(b)(6) motion is "to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief *without* resolving a contest regarding its substantive merits," *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006), the court ordinarily may not accept "matters outside the pleadings" without converting the motion into one for summary judgment. Fed. R. Civ. P. 12(d). There are some exceptions to this rule. For example, district courts may consider documents attached to the complaint or incorporated in it by reference, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002), and "documents that, although not incorporated by reference, are 'integral' to the complaint." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (quoting *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004)). In this case, however, I have disregarded the exhibits to the Hardy declaration – either because they do not fall into any of the categories sketched above, or because I do not reach the issues to which they are relevant – and I base my analysis solely on the allegations presented by plaintiff.

### B.    Section 1983

Plaintiff's constitutional claims are brought pursuant to 42 U.S.C. § 1983, which permits civil suits against those who, acting "under color" of state law, have deprived a plaintiff of "any rights, privileges, or immunities secured by the Constitution" or laws of the United States. 42 U.S.C. § 1983. "Section 1983 does not create any federal rights; rather, it provides a mechanism to enforce rights established elsewhere." *Soberanis v. City of New York*, 244 F. Supp. 3d 395, 400 (S.D.N.Y. 2017) (citing *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002)). To state a claim under § 1983, "a plaintiff must allege that (1) the defendant was a state actor, i.e., acting under color of state law, when he committed the violation and (2) the defendant deprived the plaintiff of 'rights, privileges or immunities secured by the Constitution or laws of the United States.'" *Milan v. Wertheimer*, 808 F.3d 961, 964 (2d Cir. 2015) (citation omitted).

### III.    ANALYSIS

### A.    Constitutional Claims

### 1.    State Action

Plaintiff seeks redress under § 1983 for defendants' alleged violations of his First and Fourteenth Amendment rights. SAC ¶¶ 16-20. Only "state actors" may be held liable for constitutional torts under § 1983. *Milan*, 808 F.3d at 964. Thus, once jurisdiction is established, the court's "first inquiry" in a § 1983 case is "whether the actions alleged by the plaintiffs come within the definition of 'under color of' [state] law." *Kia P. v. McIntyre*, 235 F.3d 749, 755 (2d Cir. 2000) (alteration in original) (quoting *Carlos v. Santos*, 123 F.3d 61, 65 (2d Cir. 1997)); *see also Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003) (§ 1983 plaintiffs must "show state action"); *United States v. Int'l Brotherhood of Teamsters*, 941 F.2d 1292, 1295 (2d Cir. 1991) ("Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the

challenged conduct constitutes 'state action.'"); *Ballentine v. Bronx Care Med. Ctr.*, 2024 WL 4635253, at *2 (dismissing plaintiff's § 1983 claims against Bronx Care Medical Center because it is "a private hospital, and therefore cannot be held liable under Section 1983").

"The activity of a private entity can be attributed to the state in three situations: (1) where the entity acts using the coercive power of the state or is controlled by the state (the 'compulsion test'); (2) where the entity willfully participates in joint activity with the state or its functions are entwined with state policies (the 'joint action' or 'close nexus' test); or (3) where the state has delegated a public function to the entity (the 'public function' test)." *Megginson v. Bridge, Inc.*, 2021 WL 6064409, at *2 (S.D.N.Y. Dec. 22, 2021) (citing *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012)). Here, plaintiff expressly relies on the nexus test, *see* Pl. Mem. at 25, arguing that because PCMH "operat[es] under state contracts and regulations," it "effectively acts as an arm of the state in providing mental health services." *Id*. at 25-26; *see also* SAC ¶ 17 ("Although PCMH is a private entity, its actions were taken under color of state law via its public contracts, funding, and regulatory obligations.").

Plaintiff does not provide any specific facts to support his broad assertion that PCMH "operat[es] under state contracts and regulations." Even if these conclusions were factually supported, however, they would be insufficient to show that PCMH was a state actor or that, by providing plaintiff with voluntary supportive housing, it engaged in "state action." Pl. Mem. at 24-25. To the contrary: "District courts have consistently declined to find that such conduct qualifies as state action." *Megginson v. Bridge, Inc.*, 2021 WL 6064409, at *2 (S.D.N.Y. Dec. 22, 2021) (dismissing § 1983 claims brought by tenant of supportive housing program alleging abusive conduct by program staff because "Plaintiff does not plead facts showing that The Bridge, Inc. acted as a state actor in providing him with voluntary supportive housing"); *see also Murray v.*

*New York City Dep't of Corr.*, 2016 WL 11395007, at \*10 (E.D.N.Y. Aug. 18, 2016) ("[T]ransitional housing facilities, and the employees who work for them are not considered state actors under section 1983."), *adopted*, 2016 WL 5928672 (E.D.N.Y. Sept. 30, 2016); *Azkour v. Bowery Residents' Comm., Inc.*, 2015 WL 1344770, at \*5 (S.D.N.Y. Mar. 23, 2015) ("[I]t is 'well established that the provision of low-cost supportive housing is not a "public function" within the meaning of section 1983, because "the provision of housing, for the poor or for anyone else, has never been the exclusive preserve [of] the state."'") (quoting *George*, 2012 WL 2512964, at \*4), *aff'd in relevant part, vacated in part, and remanded*, 646 F. App'x 40, \*41 (2d Cir. Apr. 18, 2016) (summary order) ("[T]he district court properly dismissed and denied leave to amend [plaintiff's] claims under § 1983 because [plaintiff] failed to adequately plead state action."), *rev'd on other grounds*, 2016 WL 2646658 (S.D.N.Y. May 9, 2016).

Moreover, as the *Murray* court explained, "[e]ven if New York City and state agencies regulate such facilities or have contracted with the organizations to provide services . . . , these contracts do not transform the private organizations or their employees into state actors[.]" 2016 WL 11395007, at \*10; *see also Lurch v. Any & All Drs. That Gave Ord. to Forcibly Injure Plaintiff & any Staff That Assisted*, 2025 WL 2922806, at \*3 (S.D.N.Y. Oct. 14, 2025) ("Receiving public funds does not turn a private actor into state actor, and the actions of private contractors do not become government action simply because of a contractors' engagement in government contracts."); *Megginson*, 2021 WL 6064409, at \*2 ("The fact that an entity receives public funds, is subject to extensive regulation, or performs public contracts does not convert private action into state action."); *Young v. Halle Hous. Assocs., L.P.*, 152 F. Supp. 2d 355, 362 (S.D.N.Y. 2001)

("Government funding of a private entity, . . . no matter how extensive, is insufficient to transform otherwise private conduct into state action.").[3]

Likewise, plaintiff's allegations are insufficient to show that defendant Barak engaged in any "state action." Indeed, other than identifying Barak as the CEO of PCMH, SAC ¶ 7, plaintiff says nothing about Barak, and makes no effort to connect him to any of the pled conduct at the Marion Avenue residence. Thus, even if plaintiff had adequately alleged that PCMH was a state actor for purposes of his § 1983 claims, those claims would fail as against Barak. *See Gaston v. Coughlin,* 249 F.3d 156, 164 (2d Cir. 2001) ("Proof of an individual defendant's personal involvement in the alleged wrong is, of course, a prerequisite to his liability on a claim for damages under § 1983."); *Ballentine v. Bowery Residents' Comm.*, 2025 WL 2145980, at *3 (E.D.N.Y. July 29, 2025) (dismissing an earlier case filed by plaintiff Ballentine against city and state leaders because he failed to offer "any facts suggesting that they individually harmed him"). Consequently, plaintiff's constitutional claims should be dismissed as against both defendants.

### 2. Amendment

Plaintiff has requested leave to amend in the event the Court finds his claims "insufficiently stated." Pl. Cross-Mot. at 5. "Generally, leave to amend should be 'freely given,' . . . and a *pro se* litigant in particular 'should be afforded every reasonable opportunity to demonstrate that he has a valid claim.'" *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000) (quoting *Satchell v. Dilworth,* 745

---

[3] Nor does a private organization become a state actor by requesting "police wellness checks," SAC ¶ 10, or by making "staff reports" leading to "forced psychiatric hospitalizations." Pl. Mem. at 9. *See Lurch*, 2025 WL 2922806, at *4 (dismissing § 1983 claim against staff member at homeless shelter who allegedly contacted emergency services "for a mental health evaluation for Plaintiff," leading to his involuntary hospitalization and medication, because "[s]he was a private party not acting under the color of state law"); *Rice v. City of New York*, 275 F. Supp. 3d 395, 404 (E.D.N.Y. 2017) ("[C]alling the police, even for an improper purpose, does not create private liability under § 1983.").

F.2d 781, 785 (2d Cir. 1984)). However, leave to amend can and should be denied where it would be "futile," such as where the "plaintiff cannot cure the deficiencies in his pleadings to allege facts sufficient to support his claim." *Onibokun v. Chandler*, 749 F. App'x 65, 67 (2d Cir. 2019); *see also Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (where the "problem with [a complaint] is substantive [and] better pleading will not cure it," leave to amend should be denied as futile).

The problem with plaintiff's § 1983 claims is substantive: PCMH and its CEO, Barak, are not state actors. While plaintiff could – potentially – add more factual detail concerning PCMH's public funding sources, the state regulations to which it is subject, and/or Barak's role (if any) in the events of which plaintiff complains, it would be futile to permit him to amend for those purposes, because the courts have "consistently declined" to find that the provision of supportive housing by a private entity "qualifies as state action," *Megginson*, 2021 WL 6064409, at *2, regardless of state funding or state regulation. *See Murray*, 2016 WL 11395007, at *12 (leave to amend § 1983 claims would be futile where those claims were asserted "mostly against private individuals and agencies that are not state actors"); *Azkour*, 2015 WL 1344770, at *8 (leave to amend § 1983 claims against provider of transitional housing would be futile because "there is no state action at issue"). Plaintiff's § 1983 claims should therefore be dismissed with prejudice as against both defendants.

## B.    Fair Housing Act Claims

### 1.    Discrimination

The FHA "broadly prohibits discrimination in housing." *Gladstone, Realtors v. Vill. of Bellwood*, 441 U.S. 91, 93 (1979). To state a claim of intentional discrimination under the FHA, a plaintiff must allege "facts that support a plausible claim that [he] was 'a member of a protected class,' suffered relevant 'adverse' treatment, and 'can sustain a *minimal* burden of showing facts suggesting an inference of discriminatory motivation.'" *Palmer v. Fannie Mae*, 755 F. App'x 43,

45 (2d Cir. 2018) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)); *accord Ballentine*, 2025 WL 2145980, at *2; *Avila v. Acacia Network, Inc.*, 2024 WL 1659456, at *4 (S.D.N.Y. Apr. 15, 2024).

Disability ("handicap") is recognized as a protected class under the FHA, 42 U.S.C. §§ 3604(c)-(f). To demonstrate that he is a member of that class, a plaintiff must show "(1) 'a physical or mental impairment which substantially limits one or more . . . major life activities'; (2) 'a record of having such an impairment'; or (3) that he or she is 'regarded' as having such an impairment." *Rodriguez v. Vill. Green Realty, Inc.*, 788 F.3d 31, 40 (2d Cir. 2015) (quoting 42 U.S.C. § 3602(h)). Here, plaintiff alleges that he was discriminated against "on the basis of disability," SAC ¶ 21, and defendants "do not dispute that Plaintiff is a member of a protected class." Def. Reply at 5. I therefore assume, for purposes of the pending motion to dismiss, that Plaintiff has a disability as defined by the FHA.

However, plaintiff "alleges no facts . . . showing that his disability was at least a motivating factor with regard to his allegations of discrimination" by defendants. *Avila*, 2024 WL 1659456, at *4. For example, he does not allege that non-disabled tenants at the Marion Avenue residence were treated more favorably than he was. *See Evans v. Bronxworks, Inc.*, 2025 WL 3469952, at *8 (S.D.N.Y. Dec. 3, 2025) (dismissing FHA discrimination claim because "at most, [plaintiff] has alleged that Bronxworks was aware of her [protected] status; she has not alleged that Bronxworks treated her differently than others on that basis"), *judgment entered,* 2025 WL 3483580 (S.D.N.Y. Dec. 4, 2025). Nor does he allege that the adverse actions of which he complains were motivated by animus against disabled persons, or offer any other factual support for his conclusory allegation that "Defendants discriminated against Plaintiff *on the basis of disability*." SAC ¶ 21 (emphasis

13

added).[4] Plaintiff has therefore failed to sustain even his "minimal burden," *Littlejohn*, 795 F.3d at 311, of showing facts suggesting an inference of discriminatory motivation. *See Perricone-Bernovich v. Tohill*, 843 F. App'x 419, 421 (2d Cir. Apr. 16, 2021) (summary order) (affirming dismissal of FHA discrimination claim where plaintiff alleged only that defendants were aware of her disabilities when they denied her request for a zoning variance).[5]

Moreover, plaintiff offers no facts connecting defendant Barak to the allegedly discriminatory conduct, which is independently fatal insofar as plaintiff seeks to impose liability on the individual defendant. *See Higgins v. 120 Riverside Boulevard at Trump Place Condo.*, 2022 WL 3920044, at *23 (S.D.N.Y. Aug. 31, 2022) (Individual board members, or "agents such as property managers," can be held liable for discrimination under the FHA, but only if "they have

---

[4] In his brief, plaintiff argues that he has demonstrated that "the motivating factor behind the adverse actions was [his] disability" because the adverse actions – specifically, the "fabricated allegations" – "were directly linked to his status as a mental health patient." Pl. Mem. at 28. Plaintiff misapprehends the standard. The question is not whether defendants' challenged conduct touched on his mental health; it is whether defendants were *motivated* to engaged in that conduct *because* of his mental health *disability*. Were it otherwise, a resident of supportive housing for individuals with mental illness would be able to plead a *prima facie* FHA discrimination claim merely by alleging that building staff requested a wellness check (justified or not) or reported a mental health crisis to first responders (accurately or not).

[5] An FHA discrimination claim may also be based on allegations that the defendants failed to reasonably accommodate plaintiff's disability. *See Perricone-Bernovich*, 843 F. App'x at 421. To plead such a claim, however, the plaintiff must show that he requested accommodations that were "necessary to afford the handicapped person an equal opportunity to use and enjoy the dwelling," and that defendants denied those accommodations. *Id.* (quoting *Olsen v. Stark Homes, Inc.*, 759 F.3d 140, 156 (2d Cir. 2014)). Here, plaintiff asserts in conclusory terms that his "reasonable requests" were denied by "staff." SAC ¶ 10; *see also* Pl. Mem. at 28 (arguing that PCMH "refus[ed] to accommodate Mr. Ballentine's needs"). But he never discloses what his "reasonable requests" were, and consequently cannot show that they were "related to [his] disabilities," *Perricone-Bernovich*, 843 F. App'x at 421, or, for that matter, that they were denied. Plaintiff therefore cannot proceed on a failure-to-accommodate theory. For the same reasons, he cannot pursue a failure-to-accommodate claim under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, which in any event does not apply to the private landlords or their agents. *See Blitz v. BLDG Mgmt. Co.*, 2023 WL 6162295, at *6 (S.D.N.Y. Sept. 21, 2023) (dismissing ADA claims against the management company responsible for plaintiff's apartment building and several individual employees of the management company, because they "do not fall within the reach of the ADA").

14

personally committed or contributed to a Fair Housing Act violation.") (quoting *Conn. Fair Housing Center v. Corelogic Rental Prop. Solutions, LLC*, 369 F. Supp. 3d 362, 375 (D. Conn. 2019)). Plaintiff's FHA discrimination claim must therefore be dismissed as against both defendants. *See Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 73 (2d Cir. 2021) (affirming dismissal of FHA discrimination claim where plaintiff adequately pleaded membership in a protected class but the complaint "lack[ed] even minimal support for the proposition that the . . . Defendants were motivated by discriminatory intent") (record citation and quotation marks omitted).

### 2.    Retaliation

The FHA also prohibits retaliation against individuals for exercising their rights under the statute. 42 U.S.C. § 3617. "To prevail on a claim of retaliation under the FHA, plaintiffs must establish: (1) that they engaged in protected activity by opposing conduct prohibited under the FHA; (2) that defendants were aware of that activity; (3) that defendants subsequently took adverse action against plaintiffs; and (4) that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse action." *Lynn v. Vill. of Pomona*, 373 F. Supp. 2d 418, 432 (S.D.N.Y. 2005), *aff'd*, 212 F. App'x 38 (2d Cir. 2007); *accord Noe v. Realty*, 2024 WL 5508198, at *16 (S.D.N.Y. July 22, 2024), *adopted sub nom. Noe v. Ray Realty*, 2025 WL 958407 (S.D.N.Y. Mar. 31, 2025), *appeal dismissed* (2d Cir. June 5, 2025).

Here, plaintiff has failed to plausibly plead the first, second, and fourth elements of the claim. As to the first element, plaintiff alleges in broad and vague terms that he engaged in "advocacy for himself and others, including objections to mistreatment." SAC ¶ 10. In his motion papers, he adds that his advocacy addressed "tenant rights and safety in supportive housing," Pl. Mem. at 14, and asserts that he advocated "for other residents, including children who were neglected and abused." *Id*. at 13, 16. This may be sufficient to show that his advocacy extended to

15

"matters of public concern," for First Amendment purposes, *id*., but does not demonstrate that he engaged in "[p]rotected activity under the FHA," which is narrowly defined to mean "action taken to protest or oppose statutorily prohibited discrimination." *Stable v. Kelly Towers Assocs.,* 2007 WL 80866, at *2 (S.D.N.Y. Jan. 10, 2007) (quoting *Miller v. Bd. of Managers of Whispering Pines at Colonial Wood Condo. II,* 457 F. Supp. 2d 126, 131 (E.D.N.Y. 2006), and holding that "[l]odging a complaint with HUD objecting to rent increases does not constitute a 'protected activity' as it [is] unrelated to a FHA discriminatory housing proceeding"); *see also Kendrick v. Greenburgh Hous. Auth.*, 2011 WL 1118664, at *10 (S.D.N.Y. Mar. 22, 2011) (dismissing FHA retaliation claim because "the conduct Plaintiff opposed was not conduct prohibited under the FHA"); 24 C.F.R. § 100.400(c)(5) (prohibiting "[r]etaliating against any person because that person has made a complaint, testified, assisted, or participated in any manner in a proceeding under the Fair Housing Act").

Nor does plaintiff explain whether the retaliatory actions he experienced were carried out by individuals who were aware of his "protected activity under the FHA," as required to satisfy both the second and the fourth elements of the claim. *See Johnson v. YWCA Residence, LLC*, 2014 WL 12782728, at *5 (S.D.N.Y. July 9, 2014) (dismissing FHA retaliation claim on summary judgment where, among other things, "[t]he record does not suggest that Defendants were aware of Plaintiff's HUD complaint when they took the actions of which Plaintiff complains," such that "no rational finder of fact would conclude that there was any causal relationship between the two"); *Cain v. Rambert*, 2014 WL 2440596, at *7 (E.D.N.Y. May 30, 2014) (dismissing FHA retaliation claim where, among other things, "[t]he Amended Complaint provides insufficient factual assertions to permit the inference that Rambert was aware of [plaintiff's arguably protected activity] when he initiated the holdover proceedings"); *Mazzocchi v. Windsor Owners Corp.*, 2013

16

WL 5295089, at *12 (S.D.N.Y. Sept. 17, 2013) (holding plaintiff's retaliation claim to be insufficiently pled where plaintiff informed defendants about another resident's membership in a protected class, but did not plead additional facts to show that "Defendants were aware that [what plaintiff] was complaining about [was] discrimination" against that resident). Indeed, as noted above, plaintiff alleges that he experienced "[r]epeated incidents" where false reports were made about him by staff, leading to "at least three hospitalizations," SAC ¶ 12, but – with the exception of a single incident involving former director Peretz (*see id*. ¶ 11) – he does not identify any of the staff members involved, much less explain how or what they knew about his advocacy work. Nor does he link the individual defendant, Barak, to any of the allegedly retaliatory conduct.

Even where it is clear that the alleged retaliator was aware of the plaintiff's protected activities, the plaintiff is required to show a causal connection between those activities and the adverse action in order to sustain a retaliation claim. "A causal connection in retaliation claims can be shown either '(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.'" *Littlejohn*, 795 F.3d at 319 (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)); *accord Smith v. Davis*, 2023 WL 5019432, at *7 (N.D.N.Y. Mar. 28, 2023) (applying framework to FHA retaliation claim), *adopted,* 2023 WL 4346961 (N.D.N.Y. July 5, 2023). Here, plaintiff provides no timeline for any of the events alleged in his pleading, and consequently cannot show that "the protected activity was followed closely by discriminatory treatment." *Littlejohn*, 795 F.3d at 319. Nor does he allege any fact that – taken as true for purposes of the pending motion – would demonstrate disparate treatment of "fellow [tenants]" or provide direct "evidence of retaliatory animus." *Id*.

Consequently, plaintiff has failed to plead a viable claim for retaliation under the FHA. *See Iqbal*, 556 U.S. at 678 (the court may not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements").

### 3.    Hostile Housing Environment

The FHA makes it unlawful for property owners and their agents to unlawfully "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling," 42 U.S.C. § 3604(b), or to "coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of . . . any right granted or protected by [§ 3604]." 42 U.S.C. § 3617. The Second Circuit has held that the these provisions protect residents against "post-acquisition" conduct (that is, conduct after the resident purchased or rented the home) that "would constitute discrimination in the enjoyment of residence in a dwelling or in the provision of services associated with that dwelling." *Francis v. Kings Parks Manor, Inc.*, 944 F.3d 370, 377 (2d Cir. 2019) (citation and quotation marks omitted), *vacated in part on other grounds*, 992 F.3d 67 (2d Cir. 2021). To prevail on such a claim, however, the plaintiff must plausibly allege "(1) that [he] was subjected to harassment that was sufficiently pervasive and severe so as to create a hostile housing environment; (2) that the harassment was because of the plaintiff's membership in a protected class; and (3) that a basis exists for imputing the allegedly harassing conduct to the landlord." *A.L.M. ex rel. Moore v. Bd. of Managers of Vireum Schoolhouse Condo.*, 2021 WL 5121137, at *1 (2d Cir. Nov. 4, 2021) (summary order) (quoting *Pierre v. Lantern Grp. Found., Inc.*, 2016 WL 3461309, at *2 (S.D.N.Y. June 20, 2016)).

I construe plaintiff's Complaint, liberally, as asserting a hostile housing environment claim under the FHA. *See* SAC ¶ 22 (noting that such claims are "actionable" under the FHA); Pl. Mem. at 28 ("PCMH's actions also created a hostile and unsafe living environment."). Once again,

18

however, plaintiff's bare-bones pleading – which is long on conclusions but short on concrete facts that might support those conclusions – fails to plausibly state such a claim.

First, plaintiff has not shown that he was "subjected to harassment that was sufficiently pervasive and severe so as to create a hostile housing environment." *Pierre*, 2016 WL 3461309, at *2. This is a demanding standard. To sustain a hostile housing environment claim, the harassment "must have been 'severe or pervasive enough to interfere with the terms, conditions or privileges' of his or her residency. In other words, the offensive conduct must 'unreasonably interfere[ ] with [plaintiff's] use and enjoyment of the premises.'" *Dickerson v. BPP PCV Owners LLC*, 2024 WL 1348497, at *2 (S.D.N.Y. Mar. 28, 2024) (citations omitted and remaining alterations in original). In order to determine whether the harassment was sufficiently "pervasive and severe," the court considers "the totality of the circumstance, including the frequency of the discriminatory conduct, its severity, and whether it is physically threatening or humiliating rather than merely offensive." *Wetzel v. Glen St. Andrew Living Cmty., LLC*, 901 F.3d 856, 862 (7th Cir. 2018); *see also A.L.M. ex rel. Moore*, 2021 WL 5121137, at *1 ("The '[f]actors to be considered . . . include . . . the nature of the conduct, the context in which the incident(s) occurred, the severity, scope, frequency, duration, and location of the conduct, and the relationships of the persons involved.'") (quoting 24 C.F.R. § 100.600(a)(2)(i)(A)). A plaintiff must demonstrate "either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions" of his living environment. *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (internal quotation omitted); *accord Dickerson*, 2024 WL 1348497, at *2 (S.D.N.Y. Mar. 28, 2024). "'Isolated or sporadic' acts generally are not pervasive or severe enough to constitute a hostile environment under the FHA." *Dickerson* 2024 WL 1348497, at *2.

Here, because plaintiff provides no dates or details concerning any of the alleged harassment he suffered (except for one incident involving former director Peretz), he has not met his pleading burden. *See Dickerson* 2024 WL 1348497, at *3 (dismissing hostile housing environment claim because the one "distressing" incident detailed in plaintiff's complaint – in which she was falsely accused of theft by a building employee, who then called the police – "cannot be considered 'extraordinarily severe' enough to constitute an 'intolerable alteration' of the conditions of Plaintiff's housing environment") (citation omitted).

Second, plaintiff has failed to show "that the harassment was *because of* the plaintiff's membership in a protected class." *Pierre*, 2016 WL 3461309, at *2 (emphasis added). In *Pierre*, the plaintiff alleged that Lantern (a provider of supportive and transitional housing) and various individual defendants "filed false police complaints against her" and "harassed her and her guests" in her home. *Id*. at *1. However, she failed to "connect[] the alleged harassment by Defendants to any discriminatory motive," *id*. at *2, requiring the dismissal of her case under Rule 12(b)(6). Similarly, in *Dickerson*, plaintiff alleged that she was falsely accused because of her race, but failed to plead any facts showing that the building employee who accused her "was motivated by racial animus during the confrontation." 2024 WL 1348497, at *3-4. So too here. As discussed in Part III(B)(1), *supra*, plaintiff does not offer any direct evidence that defendants' alleged harassment was motivated by prejudice against disabled tenants; does not show that he was treated less favorably that non-disabled tenants; and does not offer any other facts tending to show that he was harassed *because* of his disability. Consequently, he has not plead a viable hostile housing environment claim under the FHA.

### 4.  Amendment

It is possible that "better pleading," *Cuoco*, 222 F.3d at 112, could cure the problems with plaintiff's FHA claims. He should therefore be given leave to replead those claims within 30 days

of the Court's decision on the motion to dismiss. Plaintiff should be cautioned, however, that claims arising under the FHA are subject to a two-year statute of limitations, running from "the occurrence or the termination of an alleged discriminatory housing practice." 42 U.S.C. § 3613(a)(1)(A); *see also Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d 269, 291-92 (S.D.N.Y. 2011) (declining to applying "continuing violation doctrine" and dismissing FHA claims as time-barred). Thus, in addition to pleading concrete facts that satisfy the elements of an FHA discrimination, retaliation, and/or hostile housing environment claim, plaintiff must provide *dates* for all of the allegedly unlawful conduct he describes, to allow the Court to determine whether and to what extent that conduct is within the two-year statute of limitations.

Plaintiff should also be reminded that any Third Amended Complaint will *replace* (rather than supplement) his prior pleadings, and therefore must be submitted as a single document (with exhibits, if appropriate) that includes *all* of the legal claims that he is permitted to replead and *all* of the "factual content," *Iqbal*, 556 U.S. at 678, on which those claims are based. If plaintiff is granted leave to amend, and submits a Third Amended Complaint, the Court is unlikely to tolerate any additional attempts by plaintiff to further expand or alter his legal claims or factual allegations through supplemental filings.

### C.    State Law Claims

Plaintiff's state law claims are within this Court's supplemental jurisdiction only to the extent that they form "part of the same case or controversy" as his § 1983 and FHA claims. 28 U.S.C. § 1367(a). Supplemental jurisdiction may be declined where "the district court has dismissed all claims over which it has original jurisdiction." *Id*. § 1367(c)(3). Although the statute is phrased in discretionary terms, and there is no "mandatory rule to be applied inflexibly in all cases," *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988), in the "usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the

21

pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.*; *see also Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 123 (2d Cir. 2006) (reversing district court decision to retain supplemental jurisdiction over state law claims after dismissing federal claim, citing "the absence of a clearly articulated federal interest"); *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 56 (2d Cir. 2004) (upholding a district court's jurisdictional determination after the district court dismissed all federal claims); *Espinoza v. New York City Dep't of Transportation*, 304 F. Supp. 3d 374, 391 (S.D.N.Y. 2018) (noting that courts in this district routinely decline to exercise supplemental jurisdiction and collecting cases); *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.").

There is no discernable federal interest embedded in plaintiff's state-law claims for constructive eviction and breach of contract. Nor do any of the other *Cohill* factors militate in favor of this Court retaining jurisdiction over those claims. Consequently, there is no reason to vary from the usual rule in this case. As the *Young* court explained (after dismissing plaintiff's § 1983 claims against a privately owned supportive-housing facility for lack of state action), "the remaining dispute is essentially a landlord-tenant matter that is more appropriately resolved in state court." 152 F. Supp. 2d at 366; *see also Dickerson*, 2024 WL 1348497, at *4 (declining to retain jurisdiction over state law claims after dismissing FHA claims against supportive housing provider). Here too, given the absence of any valid federal claim, the Court should decline to exercise supplemental jurisdiction over plaintiff's remaining state-law claims.

## IV.    CONCLUSION

For the reasons stated above, I recommend, respectfully, that defendants' motion (Dkt. 34) be GRANTED and that plaintiff's cross-motion to amend (Dkt. 40) be GRANTED IN PART. Specifically, I recommend that plaintiff's § 1983 claims be dismissed with prejudice; that his FHA claims be dismissed with leave to amend, within 30 days of the Court's decision; and that his state law claims be dismissed without prejudice, for lack of subject-matter jurisdiction.

Dated:  New York, New York
        February 13, 2026

**BARBARA MOSES**
**United States Magistrate Judge**

### NOTICE OF PROCEDURE FOR FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

The parties have 14 days from this date to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), unless they receive this Report and Recommendation solely by mail, in which case they have 17 days from the date on which it was mailed. *See* Fed. R. Civ. P. 6(a), 6(d). Any objections must be filed with the Clerk of the Court, addressed to the Hon. Analisa Torres, and delivered to Judge Torres in accordance with her individual practices. Any request for an extension of the deadline to file objections must also be directed to Judge Torres. Failure to file timely objections will result in a waiver of such objections and will preclude appellate review. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018) (summary order); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).